# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANCHORAGE, a Municipal Corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>INTEGRATED CONCEPTS AND RESEARCH CORPORATION; PND ENGINEERS, INC.; CH2M HILL ALASKA, INC.; GEOENGINEERS, INC.,<br><br>    Defendants,<br><br>vs.<br><br>CH2M HILL ALASKA, INC.,<br><br>    Third-Party Plaintiff,<br><br>vs.<br><br>TERRACON CONSULTING, INC.<br><br>    Third-Party Defendant. | Case No. 3:13-cv-00063-SLG |

## ORDER

There are currently several motions pending before the Court. This Order addresses (1) PND Engineers' Motion for Summary Judgment – Economic Loss Doctrine at Docket 91 and (2) CH2M Hill's Motion for Summary Judgment at Docket 94. The motions have been fully briefed and oral argument was held on October 28, 2014.

After both PND's and CH2M Hill's motions were submitted, the Court granted the Municipality's (MOA) motion to amend its complaint. MOA's First Amended Complaint adds a negligent misrepresentation claim against PND, and negligence and negligent

misrepresentation claims against CH2M Hill.[1] It also adds GeoEngineers, Inc. as a defendant.[2] The First Amended Complaint expands on the nature of the damages sought, including with respect to MOA's allegations of property damage and costs to prevent risks to persons and/or property.[3] For example, MOA's professional negligence claim against PND in MOA's initial complaint alleged that "Plaintiff's real property has been damaged and rendered unusable . . . ."[4] The same claim in MOA's First Amended Complaint alleges that "Plaintiff's property has been damaged, Plaintiff's property has been lost, and costs have been occurred and will continue to be incurred to prevent risks to persons and/or property . . . ."[5]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party initially bears the burden of proving the absence of a genuine issue of material fact."[6] In cases where the non-moving party bears the burden of proof at trial, the moving party "need only prove

---

[1] Docket 144 (Order) at 3. The Court also granted CH2M Hill's motion to file a Third Party Complaint against Terracon Consulting, Inc.

[2] Docket 145 (FAC).

[3] *See, e.g.*, Docket 145 (FAC) at ¶¶ 229, 234, 243, 248, 253, & 262.

[4] Docket 2-2 (Complaint) at ¶ 225.

[5] Docket 145 (FAC) at ¶ 229.

[6] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

that there is an absence of evidence to support the non-moving party's case."[7] If the moving party meets this burden, then the non-moving party must present specific evidence demonstrating the existence of a genuine issue for trial, i.e., "evidence from which a jury could reasonably render a verdict in the non-moving party's favor."[8] The non-moving party may not rely on mere allegations or denials.[9] When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party and draw "all justifiable inferences" in the non-moving party's favor.[10] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[11]

## DISCUSSION

### I. PND's Motion

PND asserts that MOA's initial complaint sought solely economic damages in tort from PND, and maintains that MOA cannot pursue such claims against PND and its subcontractor, CH2M Hill, because they are precluded by Alaska's economic loss doctrine.[12] This doctrine generally bars tort recovery for purely economic losses. PND asserts that its summary judgment motion "concerns no issue of fact. Rather, it concerns

---

[7] *Id.* (citing *Celotex*, 477 U.S. at 325).

[8] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

[9] *Anderson*, 477 U.S. at 248. The non-moving party may rely on any of the evidentiary materials listed in Rule 56(c). *Celotex*, 477 U.S. at 324. This includes depositions, documents, affidavits, stipulations, and discovery materials. *See* Fed. R. Civ. P. 56(c)(1).

[10] *Anderson*, 477 U.S. at 255.

[11] *Id.* at 249–50.

[12] Docket 91 (PND Mot.) at 3.

the legal issue of whether [MOA] can assert tort claims against PND for its alleged economic loss."[13] PND maintains that Alaska applies a "nature of the damages test" to distinguish contract claims from tort claims and Alaska's economic loss doctrine "confines claims for economic loss to the law of contracts."[14] Since there was no contractual privity between the MOA and PND (at least with respect to MOA's claims that have been raised in this case), PND maintains it is entitled to summary judgment.

In its Opposition, MOA explains that it has divided the damages it is seeking into three categories. It asserts its "Category I Damages" are property damage, not economic loss, and thus are recoverable in a tort action. At the very least, MOA argues that a material factual dispute exists as to whether its Category I damages constitute property damage as opposed to economic loss.

MOA acknowledges that its Category II and III damages are economic loss. But it asserts that while the Alaska Supreme Court has not "squarely addressed the issue," according to MOA, Alaska law does, or at least should, permit the recovery in tort of economic loss in the absence of contractual privity, and particularly when the loss results from a design professional's negligent acts.[15] MOA also asserts that economic loss is recoverable under Alaska law on a claim for "regular" negligence when the plaintiff is within a foreseeable class that the defendant knew or had reason to know is likely to

---

[13] Docket 91 (PND Mot.) at 4.

[14] Docket 91 (PND Mot.) at 5 (citing *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848 (Alaska 1991)).

[15] Docket 109 (MOA Opp'n to PND Mot.) at 21 (citing *City of Dillingham v. CH2M Hill Northwest, Inc.*, 873 P.2d 1271, 1278 n.12 (Alaska 1994)).

suffer economic damages as a result of its conduct.[16] Finally, MOA asserts that economic loss is recoverable in an action for negligent misrepresentation because that is an economic tort, for which the appropriate remedy is damages for pecuniary loss.[17]

Integrated Concepts and Research Corporation (ICRC) had asserted that PND's motion should be deemed moot or held in abeyance because of procedural issues that were then pending. It also argues that "Alaska law does not support the sweeping relief sought by PND based on a limited factual record."[18] ICRC adds that PND did indeed have a direct contractual relationship with MOA for several years, which it asserts is a disputed material factual issue.[19] ICRC also summarizes its perspective on Alaska's economic loss doctrine, although it focuses its analysis on several cases in which there was privity of contract between the litigants. Based on that analysis, ICRC asserts that the focus under Alaska law is not on the "nature of damages," as PND has maintained. Rather, ICRC asserts the case law "shows a clear focus on the nature of the duty allegedly breached by the defendant."[20] ICRC asserts that "at this stage of the proceedings, there appears little room for disputing that PND served as the professional responsible for the

---

[16] Docket 109 (MOA Opp'n to PND Mot.) at 23-24 (citing *Mattingly v. Sheldon Jackson College*, 743 P.2d 356 (Alaska 1987)).

[17] Docket 109 (MOA Opp'n to PND Mot.) at 24-25 (citing, *inter alia*, *Nelson v. Progressive Corp.*, 976 P.2d 859 (Alaska 1999)).

[18] Docket 111 (ICRC Opp'n to PND Mot.) at 2.

[19] Docket 111 (ICRC Opp'n to PND Mot.) at 2-3. In its Reply, PND states that MOA "did not sue PND for the work performed on that contract . . . [and] if claims on the 2002 contract had been asserted, they would sound in contract not tort." Docket 127 (PND Reply) at 3 n.1.

[20] Docket 111 (ICRC Opp'n to PND Mot.) at 7-8.

OCSP [Open Cell Sheet Pile] design, which, under Alaska law, potentially opens the door to recovering economic losses."[21]

In its Reply, PND responds that there is no reason to delay a ruling on its motion, asserting that the "issues raised in PND's motion – *i.e.*, the proper legal characterization of [MOA]'s claims – directly relate to the issues presented by [MOA's then-pending] motion to amend."[22] PND further maintains that none of the reasons argued by MOA and ICRC for not applying the economic loss doctrine apply here. First, PND maintains that the Category I damages are not property damages because the Backlands property that was allegedly damaged was "created because of the work that PND did on the Project," and thus it is not "other property." Second, PND asserts that the alleged risk to persons or to the Project property is too speculative to warrant application of that exception to the economic loss doctrine. Third, PND maintains that the Alaska Supreme Court has not, and likely would not, allow professional negligence tort claims for economic loss against professional service providers and particularly when there is no contractual privity. Fourth, PND argues that MOA is incorrect as a matter of law when it asserts that the economic loss doctrine only applies when the parties are in privity of contract. Fifth, PND asserts that MOA's interpretation of Alaska law regarding a foreseeable class of plaintiffs is overbroad and inapplicable. And finally, PND asserts that MOA's negligent misrepresentation claim should be precluded because it is "an impermissible attempt to

---

[21] Docket 111 (ICRC Opp'n to PND Mot.) at 5-8.

[22] Docket 127 (PND Reply) at 3.

plead around the economic loss doctrine," because, in PND's view, that claim is in essence alleging a negligent breach of PND's contractual obligations.[23]

## II. CH2M Hill's Motion

CH2M Hill's motion for summary judgment is also based on the economic loss doctrine. And, like PND, CH2M Hill observes that there was no privity of contract between it and MOA. The parties' briefing on this motion contains each party's perspective on the relevant Alaska case law, as well as CH2M Hill's analysis of the policy reasons that support reliance on the economic loss doctrine, and in particular the doctrine's benefit in construction projects with multiple parties. MOA, for its part, devotes considerable briefing to its argument that economic loss is recoverable in an action for professional negligence when the parties are not in privity. CH2M Hill's Reply responds to this legal argument, and also thoroughly discusses its perspective as to why the Backlands is not "other property."[24]

## III. The Motions are Denied Without Prejudice to Renew with Respect to the New Claims Raised in MOA's First Amended Complaint

The Court's Order at Docket 144 granted MOA's motion to file an amended complaint adding new claims and a new party. Although there has been some briefing related to the application of the motions to the Amended Complaint, which was pending at the time the parties briefed the motions, the Court concludes that it would be premature to rule with respect to those claims at this time. Accordingly, the Court denies without

---

[23] Docket 127 (PND Reply).

[24] *See* Docket 94 (CH2M Hill Mot.); Docket 118 (MOA Opp'n to CH2M Hill Mot.); Docket 114 (ICRC Opp'n to CH2M Hill Mot.); and Docket 131 (CH2M Hill Reply).

prejudice to renew the motions with respect to the claims for negligent misrepresentation against PND and CH2M Hill, and the claim for negligence against CH2M Hill.

## IV. The Backlands is Not "Other Property"

MOA asserts that its Category I damages are property damage to the Backlands and therefore are not subject to the economic loss doctrine.[25] CH2M Hill maintains that rather than constituting potentially recoverable damages to "other property," "any damage to the Backlands represents a diminution in the value of what MOA bargained for, not property damage recoverable in tort."[26] PND quotes from a Declaration of Todd C. Cowles, a civil engineer employed by MOA, who avers that one of the "key goals" of the Project was to "expand the Port facilities through the reclamation of tidal and subtidal areas to create new property," and the Project "create[d] approximately 53 acres of new MOA property referred to as the Backlands."[27] Mr. Cowles also stated

> [t]he defective work primarily consists of the defective OCSP® system, *and the property damage consists of the Backlands' loss of lateral support due to the defective OCSP® system*, costs that have been incurred and must be incurred to stabilize the Backlands through an entirely new system to prevent it from eroding and washing out into Cook Inlet, and the removal and permanent loss of a portion of the Backlands that will necessarily result from the implementation of that new system.[28]

Based on Mr. Cowles' Declaration, the Court agrees with CH2M Hill that the "Backlands constituted the expanded acreage that was the object MOA bargained for"

---

[25] Docket 109 (MOA Opp'n to PND Mot.) at 2; Docket 118 (MOA Opp'n to CH2M Hill Mot.) at 2.

[26] Docket131 (CH2M Hill Reply) at 14.

[27] Docket 127 (PND Reply) at 4-5 (quoting Docket 110 (Cowles Decl.) at ¶ 4.

[28] Docket 110 (Cowles Decl.) at ¶ 11 (emphasis added); *see also* Docket 119 (Cowles Decl.) at ¶ 11.

such that any damage to the Backlands does not constitute damage to "other property" that would fall outside of the economic loss doctrine on that basis.[29]

MOA also argues that the economic loss doctrine does not preclude its recovery of the Category I damages because that doctrine does not apply if a plaintiff can show that the alleged malfeasance created a significant risk of personal injury or property damage. MOA and ICRC cite to several Alaska Supreme Court cases in support of this position.[30] Under this theory, even if the Backlands is not "other property," MOA's damages could still be recoverable if MOA demonstrated that the new Backlands acreage in its current form creates a significant risk of personal injury. On this topic, there is presently very little in the record. MOA's engineer Mr. Cowles simply asserts that "the instability of the Backlands poses a risk to persons present on that property."[31] He provides no further explanation or support for that statement, nor does he give any indication that the risk of personal injury is significant. MOA's only other citation to the record on this topic is to the CH2M Hill Suitability Study, but that document's discussion of the risk of personal injury is limited and insufficient to demonstrate that any such risk is significant.[32] However, given the limited discovery that has been undertaken to date,

---

[29] Docket 131 (CH2M Hill Reply) at 12. *See also Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.*, 659 A.2d 267, 271 (Me. 1995).

[30] *See* Dockets 109 and 118 (MOA Opp'ns) at 8-9 (citing *Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173 (Alaska 1993), *Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148 (Alaska 1984), *Shooshanian v. Wagner*, 672 P.2d 455 (Alaska 1983), *Northern Power & Eng'g Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324 (Alaska 1983), *Cloud v. Kit Mfg. Co.*, 563 P.2d 248 (Alaska 1977), *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976)). *See also* Docket 111 (ICRC Opp'n) at 5.

[31] Dockets 110 and 119 (Cowles Decls.) at ¶ 11.

[32] Docket 110-6 and 119-6 (CH2M Hill Suitability Study).

the Court will not grant summary judgment to PND or CH2M Hill at this point. If, after additional discovery, a party can demonstrate that there is no significant risk of personal injury, the motion may be renewed.[33]

## V. Recovery of Economic Loss in Tort Absent Privity

The District of Alaska Court has previously observed that "Alaska cases foreshadow a general rule precluding negligence actions *by those in privity* where only economic losses are alleged."[34] This case poses a different question: does Alaska law generally preclude the recovery of economic loss based upon a negligence theory *when there is a lack of privity*? The issue was directly addressed by the Alaska Supreme Court in *State for Use of Smith v. Tyonek Timber, Inc.*[35] In that case, a concrete subcontractor brought a negligence action seeking solely economic loss recovery against a concrete supplier with which the subcontractor was not in privity. The subcontractor argued that a tort claim "should extend to purely economic harm sustained by one not in privity with the supplier of a defective product."[36] After reviewing its own precedent and the law in other jurisdictions, the Alaska Supreme Court disagreed and held that the plaintiff's "lack of privity with [the defendant] precludes his recovery for pure economic loss based upon a

---

[33] *See Northern Power*, 623 P.2d at 329 n.9 (Where "the only harm alleged is damage to the product itself . . . it is entirely appropriate to require plaintiff to show that the product had the potential to cause harm to persons or other property because such a showing is necessary to bring the case within the traditional boundaries of tort law."). The Court observes that expert testimony may assist in the resolution of whether there is a significant risk of harm.

[34] *St. Denis v. Dep't of Hous. & Urban Dev.*, 900 F. Supp. 1194, 1204 (D. Alaska 1995) (emphasis added).

[35] 680 P.2d 1148 (Alaska 1984).

[36] *Id.* at 1151.

negligence theory."[37] Accordingly, unless a significant risk of personal injury is demonstrated, in order to recover economic loss in tort against PND or CH2M Hill, MOA must demonstrate that another exception to the economic loss doctrine applies.

## VI. Exceptions to the Economic Loss Doctrine

MOA and ICRC assert that Alaska law recognizes several circumstances in which economic losses are recoverable in tort absent privity. PND and CH2M Hill dispute the scope and applicability of these exceptions. The Court will address these in this Order to the extent they apply to claims raised by MOA's initial Complaint, but not in the context of MOA's negligent misrepresentation claim, which was first raised in the MOA's Amended Complaint.[38]

### A. Professional Negligence

The parties have thoroughly discussed the Alaska case law addressing the applicability of the economic loss doctrine to a professional negligence claim. It is difficult to discern a clear pattern arising from the Alaska Supreme Court's statements on this topic; each party has identified isolated sentences in the case law that support its view. What is clear from the Alaska Supreme Court's decisions on professional negligence claims and the economic loss doctrine is that those rulings were reached after a considerably fuller presentation of the facts to the Court than has yet occurred here.

---

[37] *Id.* at 1154. CH2M Hill cites to numerous cases from other jurisdictions applying the economic loss doctrine absent privity. Docket 131 (CH2M Hill Reply) at 5 n.13.

[38] *See supra*, Part III.

Indeed, the analyses in those cases were significantly fact-dependent.[39] CH2M Hill in particular provides a helpful discussion of pertinent policy considerations, arguing that risk allocation in the construction industry should be determined solely by the contracts between the various participants and this bargained-for allocation of risk should not be negated or reallocated by the imposition of tort liability.[40] And yet here, the Court has only a limited factual record. In particular, it does not have before it the relevant contractual language that would allow it to determine the bargained-for risk allocation that may have occurred for this project. The Court accordingly declines to enter a broad pronouncement as to the viability or non-viability of a professional negligence claim seeking economic loss from an entity not in contractual privity on the limited record currently before the Court. Accordingly, both motions are denied at this juncture without prejudice to renew.

### B. Particularly Foreseeable Plaintiff

In *Mattingly v. Sheldon Jackson College*, the Alaska Supreme Court allowed for the recovery in tort of economic losses incurred by a particular plaintiff that the court found the defendant knew or had reason to know was likely to be economically damaged by its conduct.[41] In *Mattingly*, the plaintiff business contracted with Sheldon Jackson College to clean a drain pipe. College employees excavated and braced a trench to expose the pipe for Mattingly's employees to perform their work. The trench collapsed on Mattingly's

---

[39] *See, e.g.*, *State Dep't of Nat. Resources v. Transamerica Premier Ins. Co.*, 856 P.2d 766, 773 (Alaska 1993) (reviewing parties' contractual agreements on allocation of loss).

[40] Docket 94 (CH2M Hill Mot.) at 13-14; Docket 131 (CH2M Hill Reply) at 6-7.

[41] 743 P.2d 356, 360 (Alaska 1987).

employees.  As a result of the employees' injuries, their ability to work for Mattingly was impacted. Mattingly also paid for the employees' medical care and treatment.  Mattingly brought a negligence claim against the college and its employees seeking recovery of his economic losses.  The Alaska Supreme Court allowed for that recovery, holding that "a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury or property damage, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct.  A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty."[42]  The court added that to "recover for purely economic harm, it must be shown that 'the defendants knew or reasonably should have foreseen . . . that ascertainable economic damages would ensue from the conduct.'"[43]  The court "emphasize[d] the role of foreseeability as it relates both to the duty owed and to proximate cause."[44]  And the court "stress[ed] that an identifiable class of plaintiffs is not simply a foreseeable class of plaintiffs. . . .  An identifiable class of plaintiffs must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted."[45]

---

[42] *Id.* (quoting *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 495 A.2d 107, 116 (1985)).

[43] 743 P.2d at 360 (quoting *People Express*, 495 A.2d at 115).

[44] *Id.*

[45] 743 P.2d at 361 (quoting *People Express*, 495 A.2d at 116).  *But see U.S. ex rel. North Star Terminal & Stevedore Co.*, 445 F. Supp. 2d 1063, 1076 n.42 (D. Alaska 2006).

Here, MOA asserts that it falls within *Mattingly's* holding. On the limited record currently before the Court, PND or CH2M Hill have not demonstrated that there is no material factual dispute as to whether each of them "knew or reasonably should have foreseen" that MOA, as the project owner, comprised a particularly foreseeable plaintiff that was "at risk and that ascertainable economic damages would ensue from the conduct."[46] Accordingly, summary judgment on this basis will be denied without prejudice to renew.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

(1) Any alleged damage to the Backlands is not damage to "other property" that would fall outside of the economic loss doctrine on that basis;

(2) Under Alaska law, the economic loss doctrine applies to parties who are not in privity so as to generally preclude a negligence claim seeking recovery of only economic loss; and

(3) PND's Motion for Summary Judgment – Economic Loss Doctrine at Docket 91 and CH2M Hill's Motion for Summary Judgment at Docket 94 are otherwise each DENIED without prejudice to renew.

DATED this 4th day of March, 2015 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
United States District Judge

---

[46] *Mattingly*, 743 P.2d at 360.