Thomas R. Buchanan (*pro hac vice*)
Jason L. Buchanan (*pro hac vice*)
Linda C. McFee (*pro hac vice*)
McDOWELL, RICE, SMITH & BUCHANAN
605 W. 47th Street, Suite 350
Kansas City, Missouri 64112
Telephone:   816-753-5400
Facsimile:   816-729-5832
Email:       tbuchanan@mcdowellrice.com
             jb@mcdowellrice.com
             lcmcfee@mcdowellrice.com

Brewster H. Jamieson, ABA No. 8411122
LANE POWELL LLC
301 W. Northern Lights Blvd., Suite 301
Anchorage, Alaska 99503-2648
Telephone:   907-264-3325
Facsimile:   907-276-2631
Email:       JamiesonB@lanepowell.com

Attorneys for Third-Party Defendant Terracon Consultants, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| MUNICIPALITY OF ANCHORAGE,<br><br>Plaintiff,<br><br>v.<br><br>INTEGRATED CONCEPTS AND RESEARCH CORPORATION, a corporation; PND ENGINEERS, INC., a corporation; and CH2M HILL ALASKA, INC., a corporation; and GEOENGINEERS, INC., a corporation,<br><br>Defendants. | Case No. 3:13-cv-00063-SLG<br><br>**THIRD PARTY DEFENDANT'S JOINDER IN DEFENDANTS' MOTION TO STRIKE NEW CLAIMS IN EXPERT REPORT** |
| CH2M HILL ALASKA, INC., a corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>TERRACON CONSULTANTS, INC., a Delaware corporation,<br><br>Third-Party Defendant. | |

PND ENGINEERS, INC., a corporation,

                       Third-Party Plaintiff,

v.

COLASKA, INC., d/b/a Quality Asphalt
Pavement or QAP, an Alaska corporation; and
MKB CONSTRUCTORS, a joint venture
comprised of D.M. Moor Constructors, Inc.,
Derian, Inc., and R. Scott Constructors, Inc.,

                       Third-Party Defendants.

COMES NOW Third-Party Defendant, Terracon Consultants, Inc. ("Terracon") and joins in the Defendants' Motion to Strike New Claims in Expert Report (Dkt. #403). In further support of the Motion, Terracon states as follows:

**I.**      **<u>Untimely Addition of the New Galvanizing Claims in the July 19, 2016 SGH Report Will Severely Prejudice Terracon as Those Claims Present a Conflict That Will Require Lane Powell, LLC to Withdraw as Counsel</u>**

Plaintiff's injection of its new galvanization claims by and through the July 19, 2016 SGH Report is an effort to amend its complaint without obtaining leave of court. This Court should reject those efforts and strike these new claims.

A court may refuse to permit amendment to add new claims where the plaintiff has unduly delayed and allowing assertion of new claims would unduly prejudice the defendant. *See Deasy v. Hill*, 833 F.2d 38 (4th Cir. 1987), *certiorari denied* 108 S. Ct. 1271, 485 U.S. 977, 99 L.Ed.2d 483. See also *Chodos v. West Publ'g Co.,* 292 F.3d 992, 1003 (9th Cir.2002) (instructing that when considering a motion for leave to amend complaint, court must consider undue delay, bad faith, prejudice to opposing party or dilatory tactics by movant). The most important factor in the analysis of whether to permit new parties or claims is whether the opposing party would be prejudiced by the proposed amendment, and this inquiry is often intertwined with the consideration of whether there was undue delay on the part of the movant: a long delay is more likely to be found prejudicial. *See Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight.") *Accord Lone Star Ladies Inv. Club v.*

**Third Party Defendant's Joinder in Defendants' Motion to Strike New Claims in Expert Report**
*Municipality of Anchorage v. Integrated Concepts & Research, et al.* **(Case No. 3:14-cv-63-SLG)**     **Page 2 of 9**

Case 3:13-cv-00063-SLG   Document 404   Filed 08/05/16   Page 2 of 9

*Schlotzsky's Inc.,* 238 F.3d 363, 368 (5th Cir.2001) ("Prejudice is the 'touchstone of the inquiry under [R]ule 15(a).'"). Prejudice is determined from the standpoint of the opposing party, not the party moving to amend. *See Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir.2004).

Additional discovery or preparation which would be required as result of belated addition of new claims is recognized as source of prejudice justifying refusal denial of new claims or parties. See *Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 746 F. Supp. 1051 (D. Kan. 1990). Prejudice has also been found when a proposed amendment: 1) contains unexpected allegations or defenses; 2) is asserted after completion of discovery; or 3) is based on a new set of operative facts. *See Citizens and Southern Secs. Corp. v. Braten,* 733 F. Supp. 655, 660 (S.D.N.Y. 1990); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir. 1985). As set forth in the Motion to Strike, those factors are clearly present here.

Prejudice may also result when the proposed amendment will necessitate the disqualification of counsel. "Disqualification, by denying a party the counsel of its choice, is prejudicial in its own right. Moreover, disqualification would involve added delay, thereby additionally prejudicing plaintiffs by denying them a prompt trial on their claims." *Chemical Bank v. Affiliated FM Ins. Co.*, 1993 WL 526230 *3 (S.D.N.Y. Dec. 14, 1993) (citing *Visual Word Systems, Inc. v. CPT Corp.,* 83 Civ. 2130 (CES), 1985 WL 567 (S.D.N.Y. April 19, 1985)). That may very well be the result here if Plaintiff is permitted to pursue its new galvanization claims.

As set forth in the Motion to Strike, injection of new criticisms of the cathodic protection system, including the galvanization of the sheet piles, will necessarily implicate the work of Coffman Engineers, Inc., the cathodic protection expert hired by ICRC for this Project. Terracon's counsel, Lane Powell, LLC, has advised that it has a long-standing attorney-client relationship with Coffman. Potential conflicts arising from that relationship were vetted and laid to rest almost two years ago when Terracon was brought into this case and hired Lane Powell, LLC. Because the First Amended Complaint stated no claims arising out of any alleged defects in the cathodic protection system or the coating of the steel, it was determined no actual conflict of interest existed. To the extent that Coffman is either brought into this action as a defendant or third party defendant, or is otherwise the target of efforts to assign some fault for these new

**Third Party Defendant's Joinder in Defendants' Motion to Strike New Claims in Expert Report**
*Municipality of Anchorage v. Integrated Concepts & Research, et al.* **(Case No. 3:14-cv-63-SLG)** **Page 3 of 9**

Case 3:13-cv-00063-SLG   Document 404   Filed 08/05/16   Page 3 of 9

claims as an empty chair with an attendant exposure for future indemnification claims, Lane Powell advises it would likely have to withdraw from representing Terracon in this case.

The prejudicial impact of withdrawal to Terracon cannot be overstated. Lane Powell, and in particular Brewster Jamieson, have been integral to Terracon's defense and have played a very substantive and meaningful role throughout this litigation. Given the complexity of the issues, Mr. Jamieson's expertise in issues of Alaskan law, the breadth of the evidence and the number of witnesses and experts involved, forcing Terracon to retain new counsel only eight (8) months before trial would be devastating. For this reason alone, the Motion to Strike should not be granted.

II.      **The New Galvanization Claims in the July 19, 2016 SGH Report Are Premised Upon False Conclusions and are Wholly Unsupported**

As set forth in Defendants' Motion to Strike, the July 19, 2016 report issued by Simpson, Gumpertz & Heger, Inc. ("SGH") presents new claims that are premised upon SGH's conclusion that although the specifications required hot dipped galvanized coating of the sheet piles and wye connectors, metalizing coating was used instead. (See Dkt. #394, Ex. A, pp. 28-29.) SGH further claims that use of the metallized coating has significantly reduced the interlock capacity of the sheet piles. (*Id.*) These claims are demonstrably untrue.

SGH has created the following new liability theory:

> **Our evaluation also confirmed that although PND's design specified the sheet piling to be hot dip galvanized, this was not done and a spray applied metalized coating was used instead.** We obtained samples of new and extracted sheet piles from the stockpiles at the site. We tested samples of interlocked sheet piles and determined that the coating reduced the ultimate interlock capacity significantly compared to the capacity without the coating. Our evaluation confirmed that PND specified testing of the interlocks by the manufacturer and these tests were completed, confirming the minimum ultimate interlock capacity of the as manufactured bare steel sheeting. However, PND failed to require tests to be completed after the application of the coating. In addition, PND failed to evaluate the effects of the coating and long-term corrosion on the capacity of the sheet pile interlocks over the service life of the OCSP structure. Our evaluation confirmed that the factor of safety of the sheet pile interlocks did not meet the criteria and, if cathodic protection is not provided or is ineffective on the interior of the interlocks, the expected section loss on the interlock fingers and thumbs reduce the expected safe service life to less than the specified 50 years.

(2016 SGH Report, [Dkt. #394, Ex. A] pp. 28-29) (emphasis added).

**Third Party Defendant's Joinder in Defendants' Motion to Strike New Claims in Expert Report**
*Municipality of Anchorage v. Integrated Concepts & Research, et al.* **(Case No. 3:14-cv-63-SLG)      Page 4 of 9**

Case 3:13-cv-00063-SLG   Document 404   Filed 08/05/16   Page 4 of 9

First, the CH2M Hill Suitability Study, upon which Plaintiff based its claims in this lawsuit, confirms that galvanized sheet piles and wye connectors were actually installed at the Project: "[t]he galvanized steel components were included in the contract documents **and have been installed.**" (Ex. A to Motion [Doc. #403], Section 6.2.1) (emphasis added).

Second, myriad project documents confirm that the steel used throughout the life of the Project was galvanized in accordance with the specifications. Given the untimely disclosure of this new claim, Terracon has not had sufficient time to conduct an exhaustive review of the millions of records produced in this case. Terracon's preliminary review and the deposition of Brad West on July 28, 2016, only seven (7) days after the new theory was disclosed, reveal substantial testimony and numerous Project documents throughout the course of the Project that demonstrate that the sheet piles used for the OCSP wall were in fact galvanized in accordance with project specifications and that the premise of the new claim is untrue.

The only substantive deposition testimony on galvanization in the myriad depositions taken before Plaintiff's new theory was announced on July 21, 2016, came from Chuck Casper, Senior Engineer for ICRC, who testified that although PND Engineers proposed using metallized coating, that proposal was rejected and hot-dipped galvanizing was actually performed on the sheet piles and interlock connectors. He further confirmed that spray metal coating was only used in making repairs to the galvanized steel, as authorized by the specifications. (Casper Depo., 220:12-221:25, attached as Exhibit G to Motion [Doc. #403].) Casper's sworn testimony that hot-dipped galvanization was used is supported by the POA specifications, which "… reference ASTM A123 with an additional thickness requirement of 12 mils. The standard specification grades only go up to 100 with a minimum 3.9 mils thickness." (PND July 29, 2010 letter, attached as Exhibit 1.) That same letter reflects 68 tests of galvanization thickness performed by CALWEST, 86 tests performed by Smith Emory Labs, and 148 tests performed by Metalab.

Numerous other Project documents include testing reports by independent quality assurance firms spanning more than three years, all of which confirm that the steel was actually hot dipped galvanized and the galvanization met project specifications. As set forth in Exhibit I to the Motion to Strike, McClure Engineering d/b/a Metalab performed numerous tests and evaluations of the galvanized coatings applied to the sheet piles at the galvanizing plant in

**Third Party Defendant's Joinder in Defendants' Motion to Strike New Claims in Expert Report**
*Municipality of Anchorage v. Integrated Concepts & Research, et al.* **(Case No. 3:14-cv-63-SLG)      Page 5 of 9**

Case 3:13-cv-00063-SLG   Document 404   Filed 08/05/16   Page 5 of 9

Oklahoma and verified the galvanizing met project specifications. Similarly, Smith-Emery Laboratories performed evaluations of the galvanization thickness of sheet piles galvanized at the CALWEST Galvanizing Plant and confirmed the galvanized coating met project specifications. (See sample Smith-Emery Evaluation Reports, attached as Exhibit 2.)

In addition, there are bills of lading, packing lists, and quality inspection reports over the duration of the Project tracking the shipment of steel piles from the steel mills to the galvanizing plants and then to the Project site. For example, invoices issued by CALWEST to Alaska Interstate Construction between December 2007 and March 2008 reveal that approximately 2,000 sheet piles were galvanized for use at the Project in that time period alone. (See Invoices, attached as Exhibit 3.) Similarly, ICRC Material Receiving and Quality Inspection Reports dated in April and May 2008 evidence shipments of more than 600 galvanized sheet piles to the Project from CALWEST in those two months. (See Reports, attached as Exhibit 4.)

Galvanization continued to be performed on the sheet piles during the subsequent phases of the Project. For example, Geraud Ameristeel/LB Foster shipped hundreds of sheet piles to AZZ Galvanizing in Tulsa, Oklahoma, in August 2010 for hot-dipped galvanization in connection with the Project. (See Packing Lists, attached as Exhibit 5.) And, during May, June, July and August 2011, numerous ICRC Material Receiving and Quality Inspection Reports confirm that galvanized sheet piles were shipped to West Construction Company for use at the Project. (Samples of the 2011 Reports are attached as Exhibit 6.)

Moreover, DOWL, LLC/Alaska Testlabs and/or its team member QA Services, Inc., provided quality assurance observation and inspection services during construction of the Project. QA Services, Inc. prepared observation reports, which included observations of damage to the galvanized steel piles and of repairs made to the galvanized piles and splices. (See sample observation reports, attached to Motion [Doc. #403] as Exhibit J.) Those observation reports noted that the sheet piles were in fact galvanized, as they specifically identified damage to the galvanized coating during handling and hot-stick repairs that were being made to the galvanized steel. The installation of galvanized sheet piles at the Project is further supported by the fact that PND Engineers and Coffman approved a reduction in thickness of the galvanization on the sheet piles in 2011. (See Ex. 1 and March 20, 2011 letter from Coffman, attached as Exhibit 7.)

**Third Party Defendant's Joinder in Defendants' Motion to Strike New Claims in Expert Report**
*Municipality of Anchorage v. Integrated Concepts & Research, et al.* **(Case No. 3:14-cv-63-SLG)** **Page 6 of 9**

Case 3:13-cv-00063-SLG   Document 404   Filed 08/05/16   Page 6 of 9

On July 28, 2016, the parties deposed Brad West, of West Construction, who is likely the most experienced contractor with regard to open cell sheet pile ("OCSP") projects, having constructed more than fifteen OCSP projects. (West Depo., 23:16-24:3, attached as Exhibit 8.) West bid the initial work in 2008, and he protested the award to QAP/MKB on the basis that they were inexperienced, had not properly identified the means and methods necessary to construct the OCSP at Anchorage, and had not adequately budgeted sufficient funds for the pile driving. (West Depo., 28:7-33:24.) West's bid protest critique of QAP/MKB proved accurate and serious problems in construction occurred in 2008 and 2009. (West Depo., 34:3-11.) West was hired as the replacement contractor in 2010. (West Depo., 43:5-19.) West had major problems getting paid on the project (West Depo., 54:17 – 55:24),[1] but he testified that if the POA project had not stopped it could have been successfully constructed.

West testified that West Construction ordered hot-dipped galvanized sheet piles for its work on the Project and that galvanization was in fact performed. (West Depo., 213:21-214:5; 215:23-216:24; Depo. Ex. 748, attached as Exhibit 13.) West further testified that the galvanization specifications for this Project were much **greater** than those on other OCSP sheet pile projects that he was involved with. (West Depo., 214:6-13.) Specifically, this Project required hot-dipped galvanization of tail walls, which was unusual, and the thickness specified for the galvanization for the sheet piles was heavier than they had encountered before. (West Depo., 214:14-215:22.) In addition, the specifications required repair to galvanized areas that were damaged during transport or installation. (West Depo., 218:17-219:14.) West confirmed that repairs to the hot-dipped galvanizing were to be made using a spray on replacement coating

---

[1] By approximately 2008, loss of senate seniority when Sen. Stevens was not reelected, Congress' reform regarding earmarks, and the recession led to serious problems in getting funding to complete the Project. (Ribuffo Depo. 285:12-287:2, Exhibit 9; MOA_00409129, Exhibit 10.) This problem grew and Port Engineer Todd Cowles testified that by 2010, three years before the CH2M Hill Suitability Study, the Project had serious funding problems. (Cowles Depo., 574:2–7, Exhibit 11.) As of the end of 2011, funding available to continue the Port project was nonexistent. (Ribuffo Depo., 31:15-20.) In response to West's complaints about nonpayment, MarAd exchanged numerous communications with ICRC on the funding problems including one dated February 15, 2011, which stated that as to the $12 million in outstanding invoices, "[o]f course we pay that and it'll empty the bank." (Loken Depo. Ex. 480, attached as Exhibit 12.)

**Third Party Defendant's Joinder in Defendants' Motion to Strike New Claims in Expert Report**
*Municipality of Anchorage v. Integrated Concepts & Research, et al.* **(Case No. 3:14-cv-63-SLG)     Page 7 of 9**

Case 3:13-cv-00063-SLG   Document 404   Filed 08/05/16   Page 7 of 9

(West Depo., 219:15-220:4.)  He also testified that repairs cannot be made to galvanization that was never applied to a sheet pile in the first instance.  (West Depo., 217:5-11.)

Plaintiff's new claim, premised on SGH's claim that its "… evaluation also confirmed that although PND's design specified the sheet piling to be hot dip galvanized, this was not done and a spray applied metalized coating was used instead," is bogus and contrived.  Plaintiff appears to be making up new theories of liability to distance itself from the claims in the CH2M Hill Suitability Study, which recent discovery has revealed are wholly devoid of merit.  As one example, Port Engineer Todd Cowles directed CH2M Hill during the Suitability Study to arbitrarily increase the length of the area designated as "essential facilities."  "Essential facilities" were those contemplated to be more resistive to certain seismic events.  (CH2M Hill Senior Project Manager, Doug Playter Depo, 395:18–396: 25, attached as Exhibit 14.)  The additional area designated by Cowles was never contemplated or designed to be "essential facilities," and his direction to CH2M Hill "greatly increased" the seismic loading applied to the area and "greatly increased" the hypothesized movements shown in CH2M Hill's modeling compared to the actual criteria for the area.  (Playter Depo, 409:6-411:8.)  Similarly, CH2M Hill modeled the constructed OCSP using 22 feet of soft mud immediately beneath the structure.  (Ha Pham Depo., 240:18-242:15, attached as Exhibit 15.)  Logs of borings performed by four different organizations, including, U.S Corp. of Engineers, PND Engineers, Shannon & Wilson Engineers, and Terracon, established there is no boring or other testing in the area constructed that would justify use of a 22-foot layer of soft mud.  (Ha Pham Depo., 257:19-261:19; 262:7-264:19; 265:2-266:3.)  The actual soils are dense sands or clays.  (*Id*.)  This falsification of actual soils materially reduced the theoretical performance of the OCSP in CH2M Hill's modeling.  That is even aside from the other material problems with CH2M Hill's modeling, which would purport to predict a failure of the OCSP in the January 24, 2016 earthquake.  Mr. Siegel determined CH2M Hill's modeling would have predicted substantial movement ranging from 6.5 feet to hundreds of feet, with major damage or even the destruction of the OCSP resulting from the January 24, 2016 earthquake, when, in fact, the MOA has admitted no damage has been found.  (Report of Timothy C. Siegel, P.E., G.E., D.GE, pp. 40-41, attached as Exhibit 16.)

**Third Party Defendant's Joinder in Defendants' Motion to Strike New Claims in Expert Report**
*Municipality of Anchorage v. Integrated Concepts & Research, et al.* **(Case No. 3:14-cv-63-SLG)      Page 8 of 9**

Case 3:13-cv-00063-SLG   Document 404   Filed 08/05/16   Page 8 of 9

## CONCLUSION

For all of these reasons, and those set forth in the Motion, Terracon respectfully requests that the Court enter an Order striking the new galvanization related claims from the 2016 SGH Report and precluding Plaintiff from presenting evidence or otherwise pursuing those claims at trial, and for such other and further relief as this Court deems just and proper.

DATED this 5th day of August, 2016.

McDOWELL, RICE, SMITH & BUCHANAN
A Professional Corporation

By _s/ Thomas R. Buchanan_____
    Thomas R. Buchanan, *pro hac vice*
    Jason L. Buchanan, *pro hac vice*

LANE POWELL LLC

By _s/ Brewster H. Jamieson_____
    Brewster H. Jamieson, ABA No. 8411122

Attorneys for Terracon Consultants, Inc.

I certify that on August 5, 2016, a copy of
the foregoing was served electronically on:

Bruce E. Davison, davison@gci.net
Donald G. Featherstun, dfeatherstun@seyfarth.com
Bennett D. Greenberg, bgreenberg@seyfarth.com
Bennett J. Lee, blee@wthf.com
Lisa M. Marchese, lisamarchese@dwt.com
James E. Howard, jimhoward@dwt.com
Robert P. Owens, owensrp@muni.org
Jason N. Smith, jnsmith@seyfarth.com
Christopher Wright, cwright@wthf.com
William F. Cronin, wcronin@corrcronin.com
Todd T. Williams, twilliams@corrcronin.com
Max Garner, mgarner@bhb.com
Ray Biagini, rbiagini@mckennalong.com
Terrence J. Scanlan, tscanlan@skellengerbender.com
Lindsey M. Pflugrath, lpflugrath@skellengerbender.com
Thomas Buchanan, tbuchanan@mcdowellrice.com
Jason Buchanan, jb@mcdowellrice.com
Linda McFee, lmcfee@mcdowellrice.com
Jason M. Kettrick, kettrick@carneylaw.com
Michael C. Geraghty, Geraghty@oles.com
Raymond B. Biagini, rbiagini@cov.com
Paul R. Raskin, praskin@rafellawgroup.com

s/ Brewster H. Jamieson_____

**Third Party Defendant's Joinder in Defendants' Motion to Strike New Claims in Expert Report**
*Municipality of Anchorage v. Integrated Concepts & Research, et al.* **(Case No. 3:14-cv-63-SLG)**      **Page 9 of 9**

Case 3:13-cv-00063-SLG   Document 404   Filed 08/05/16   Page 9 of 9