**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

MUNICIPALITY OF ANCHORAGE,

                Plaintiff,

    v.

INTEGRATED CONCEPTS AND
RESEARCH CORPORATION, a corporation;
PND ENGINEERS, INC., a corporation;
CH2M HILL ALASKA, INC., a corporation;
and GEOENGINEERS, INC. a corporation,

                Defendants.

_____

CH2M HILL ALASKA, INC. a corporation,

                Third-Party Plaintiff,

    v.

TERRACON CONSULTING, INC., a
Delaware corporation,

                Third-Party Defendant.

_____

Case No. 3:13-cv-00063-SLG

## ORDER RE CH2M HILL ALASKA'S MOTION FOR SUMMARY JUDGMENT

This litigation concerns the Port of Anchorage Intermodal Expansion Project (the

Project), and the Open Cell Sheet Pile (OCSP) design used in the Project's construction.

The facts of this case are familiar to the parties and set out in the Court's order at Docket

67. There are currently several motions for summary judgment pending. This order

addresses one of those motions: CH2M Hill Alaska's Motion for Summary Judgment at

Docket 280. The motion has been fully briefed[1] and oral argument was held on June 29,

---

[1] *See* Docket 280 (CH2M Hill Alaska Mot. Summ. J.); Docket 303 (MOA Opp'n to CH2M Hill Alaska

2016.  For the reasons set out below, the motion will be granted in part and denied in part.

## BACKGROUND

The Municipality of Anchorage's (MOA) First Amended Complaint at Docket 145 alleges three tort claims: negligence, professional negligence, and negligent misrepresentation against PND, CH2M Hill Alaska, and GeoEngineers.[2]  MOA has not alleged any contractual claims against these Defendants because MOA did not have a direct contractual relationship with any of these parties.  CH2M Hill Alaska,[3] specifically, is four times contractually removed from MOA.

Defendants have asserted that none of MOA's alleged losses are recoverable in tort.  In July 2014, PND and CH2M Hill Alaska filed motions for summary judgment[4] in which they argued that the economic loss doctrine precluded all of MOA's tort claims.  In response, MOA laid out three categories of damages: Category I Damages, which MOA described as property damage; and Category II and III Damages, which MOA acknowledged constitute economic losses.  In its briefing on those earlier motions, MOA argued that the economic loss doctrine did not preclude its recovery of its Category I

_____

Mot.); Docket 325 (CH2M Hill Alaska Reply).

[2] *See* Docket 145 (Amend. Compl.) at 43-52.

[3] CH2M Hill Alaska, previously known as VECO, is distinct from CH2M Hill, Inc., the parent company of CH2M Hill Alaska.  MOA hired CH2M Hill, Inc. to evaluate the suitability of the Project.  *See* Docket 281-25 (Suitability Study).

[4] Docket 91 (PND Mot. for Summ. J.); Docket 94 (CH2M Hill Alaska Mot. for Summ. J.).

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 2 of 31

damages and that an exception to that doctrine applied to its recovery of economic losses.[5]

In an order issued in March 2015, the Court denied both motions for summary judgment without prejudice, allowing for renewal when the record became more fully developed. But the Court did hold that MOA could not recover under a theory that the Backlands constitute "other property" that would fall outside the economic loss doctrine. The Court also held that the economic loss doctrine applies to parties not in privity; accordingly, MOA cannot recover in tort for its economic losses unless an exception to the economic loss doctrine applies. The prior order also delineated possible exceptions to the economic loss doctrine under Alaska law; but the Court's prior order did not determine whether any exception to the doctrine applies in this case.[6]

CH2M Hill Alaska has now filed another motion for summary judgment. The motion addresses MOA's claims for property damage, the exceptions to the economic loss doctrine that were discussed in the March 2015 Order, and MOA's claim for negligent misrepresentation, which was filed after the briefing on the first summary judgment motions was completed.

CH2M Hill Alaska maintains that MOA's attempt to characterize its losses as property damage fails as a matter of law. It argues that there has not been damage to other property and the alleged defective design did not create a significant risk of personal

---

[5] Docket 109 (MOA Opp'n).

[6] Docket 188 (Order).

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 3 of 31

injury or property damage.  Moreover, CH2M Hill Alaska asserts that it was not the cause of any safety risk because it did not contribute to the final design.[7]

CH2M Hill Alaska also argues that MOA is seeking only economic damages, which are barred by the economic loss doctrine, as no exception to that doctrine applies.  It maintains that MOA was not a particularly foreseeable plaintiff to CH2M Hill Alaska because it prepared its March 2007 report for PND, and did not intend for the report to be submitted to MOA.  CH2M Hill Alaska also maintains that MOA's claim for professional negligence cannot stand against CH2M Hill Alaska because the network of contracts between the parties "allocated the parties' respective risks, duties, and remedies," and the parties set their fees accordingly.[8]  Finally, CH2M Hill Alaska argues that MOA's claim for negligent misrepresentation fails as a matter of law because there is no evidence of any reliance by MOA on CH2M Hill Alaska's statements.[9]

In opposition, MOA argues that the economic loss doctrine is inapplicable because it is seeking compensation, at least in part, for property damage.  MOA explains that damage to "other property" has already occurred to both the property upon which the OCSP system stands and to the navigable waters of Cook Inlet.[10]  It also argues that there are material disputes of fact as to whether the Project creates a significant risk of property damage and personal injury.[11]

---

[7] Docket 280 at 17-23.

[8] *Id.* at 15.

[9] *Id.* at 26.

[10] Docket 303 at 30-33.

[11] MOA, at Docket 394, sought leave to supplement the record with its expert report, which

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 4 of 31

As for its economic losses, MOA argues that certain exceptions to the economic loss doctrine apply such that it can maintain these claims. And it asserts that its claims encompass not only CH2M Hill Alaska's March 2007 Report, but a validation letter authored by CH2M Hill Alaska in 2006. For its negligence claim, MOA contends that the particularly foreseeable plaintiff exception applies. It explains that CH2M Hill Alaska knew or should have known that any negligence on its part would harm MOA, the owner of the Port. With respect to professional negligence, MOA argues that this claim is not precluded by the indirect contractual relationship between these two parties. In support, it points out that CH2M Hill Alaska has not identified any relevant contractual language in which the risk of a defective design was allocated to another party. Finally, MOA maintains that there are disputed material facts regarding MOA's negligent misrepresentation claim, and specifically with respect to MOA's reliance on CH2M Hill Alaska's alleged misrepresentations. For all of its claims, MOA characterizes CH2M Hill Alaska's work as directly traceable to the alleged defective design.[12]

## DISCUSSION

### 1. Jurisdiction

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.[13] The Court also has supplemental

---

includes an assessment of the risk that the Port Expansion poses to persons and property. The Court permitted MOA to supplement the record with that report at Docket 466.

[12] *See* Docket 303.

[13] *See* Docket 67 (Order re Mot. to Remand) for a full discussion of the Court's subject matter jurisdiction in this case.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 5 of 31

jurisdiction pursuant to 28 U.S.C. § 1367 because all claims arise from the same transaction or occurrence. The "invocation of removal jurisdiction by a federal officer does not revise or alter the underlying law to be applied."[14] Here, all of MOA's claims are based on Alaska law, so Alaska substantive law applies to this case.

### 2. Standard of Review

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] In cases where the non-moving party bears the burden of proof at trial, the moving party "need only prove that there is an absence of evidence to support the non-moving party's case."[16] If the moving party meets this burden, then the non-moving party must present specific evidence demonstrating the existence of a genuine issue for trial, i.e., "evidence from which a jury could reasonably render a verdict in the non-moving party's favor."[17] When considering a motion for summary judgment, a court must draw "all justifiable inferences" in the non-moving party's

---

[14] *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981).

[15] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[16] *Id.* (citing *Celotex*, 477 U.S. at 325).

[17] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Each party may rely on any evidentiary materials that are in the record. *Celotex*, 477 U.S. at 324. This includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations," and discovery responses. *See* Fed. R. Civ. P. 56(c)(1).

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 6 of 31

favor.[18]  If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[19]

### 3. Property Damage

Under Alaska law, tort-based claims that seek only a recovery for economic losses are generally precluded by the economic loss doctrine.  But when the action seeks damages for personal injury or property damage, the economic loss doctrine does not apply and such damages may be recoverable.  The line between property damage and economic loss is at times difficult to discern.  Under Alaska law, damage to "other property" that is separate and distinct from the defective product is recoverable in tort.[20] In addition, the Alaska Supreme Court has held that a party may recover for damage to the defective product itself when the loss occurs under dangerous circumstances that created a significant risk of personal injury or property damage.[21]  Here, MOA argues both that the OCSP system has damaged "other property" and that the OCSP system creates a significant risk of personal injury or property damage such that the losses associated with the alleged defects in the Project itself are recoverable.

### a. Other Property

In MOA's opposition to the earlier summary judgment motions at Docket 109, it argued that it had suffered property damage in the form of damage to the Backlands.  But

---

[18] *Anderson*, 477 U.S. at 255.

[19] *Id.* at 249-50.

[20] *See Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976) (distinguishing personal injury and property damage from economic loss).

[21] *N. Power & Eng'g Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324 (Alaska 1981).

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 7 of 31

the March 2015 Order held that the Backlands are not "other property" because they constitute "the expanded acreage that was the object MOA bargained for."[22]

MOA now maintains that CH2M Hill Alaska's alleged negligence has damaged other property, separate and apart from the Backlands. This other property, asserts MOA, consists of two areas: the land upon which the OCSP currently sits and the navigable waters of Cook Inlet. With regard to the property underneath the OCSP system, MOA maintains that it "never bargained for, or thought, it would be left with a nine story tall one-half mile long unusable, unstable, and dangerous structure sitting on its property."[23] According to MOA, CH2M Hill Inc. has estimated that MOA must spend approximately $135 million to remove the OCSP structure from the land. As to the waters of Cook Inlet, MOA alleges that property damage began in July 2010, when sinkholes developed behind the face of the OCSP wall that caused fill material to leak into the inlet. Soon after, the U.S. Army Corps of Engineers notified MOA that it was in violation of its permit. MOA indicates that it has already spent approximately $33 million to stem the damage caused to the waters of the inlet, an amount for which it appears to seek recovery in this action.

But the Court is unpersuaded that either area—the property upon which the OCSP system stands or the waters of Cook Inlet—constitutes "other property" for purposes of MOA's recovery in tort. The property upon which the OCSP system stands is not separate and distinct from the Project property. The Alaska Supreme Court has recognized that component parts that are integral to a structure are not "other property" for purposes of

---

[22] *See* Docket 188 (Order) at 8-9.

[23] Docket 303 at 32.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 8 of 31

tort liability.[24]  The Court finds that the property underneath the OCSP project is analogous to a component part of the Project, such that any damage to the underlying property represents a diminution in the value of MOA's bargain—not damage to other property.  Moreover, MOA's argument that the underlying land has been damaged because the OCSP system blocks access to and use of this underlying property seeks compensation for loss of use, which is an economic loss and not property damage.[25]

Similarly, the leakage of fill material into the waters of Cook Inlet does not constitute damage to other property.  MOA has not demonstrated that it owns the navigable waters of Cook Inlet.  Rather, Alaska law appears to assign ownership of the navigable waters around Alaska to the State of Alaska.[26]  Moreover, the leakage of fill material into the waters of Cook Inlet has not been linked to the OCSP design, let alone to CH2M Hill Alaska's role in the Project.  Instead, as Army Corps representative Robert Loken testified at deposition, it appears that fill material has been sloughing into the Cook Inlet due to an interlock problem.[27]  CH2M Hill Alaska persuasively notes that "the OCSP system was not designed to leave openings in the interlocks."[28]  In response, MOA does not present any evidence that fill material is leaking into the inlet due to an OCSP design

---

[24] *N. Power*, 623 P.2d at 330 (holding that when a defective component part causes damage to another component part, this does not constitute damage to "other property").

[25] *Alaska Constr. Equip., Inc. v. Star Trucking, Inc.*, 128 P.3d 164, 169 (Alaska 2006) (holding that compensation for temporary loss of use is economic loss).

[26] Alaska Statute 44.03.020.

[27] Docket 326-9 (Loken Depo.) at 2-4.

[28] Docket 325 at 14.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 9 of 31

defect.  Nor does MOA explain the connection between CH2M Hill Alaska's role in the Project and the interlock problem.

CH2M Hill Alaska has shown that the OCSP system has not damaged MOA's other property, and MOA has not presented evidence upon which a reasonable trier of fact could conclude otherwise.

### b. Significant Risk of Personal Injury or Property Damage

Absent damage to other property, MOA may nonetheless recover for loss to the defective product itself when those losses occur under circumstances that create a significant risk of personal injury or property damage.[29]  The Court's March 2015 Order found that there was then very little in the record on the topic of significant risk, so the Court denied summary judgment without prejudice to renew.  Since then, the parties have extensively supplemented the record in an effort to fully address the issue.

The Alaska Supreme Court articulated this theory of recovery in *Northern Power*, a case involving the failure of a generator's engine.[30]  Plaintiff sought recovery in tort solely for economic losses.  In denying that relief, the Court observed that when the engine failed, there was "no evidence of violence, fire, collision with external objects, or

---

[29] *See, e.g.*, *Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173 (Alaska 1993); *State for Use of Smith v. Tyonek Timber, Inc.*, 680 P.2d 1148 (Alaska 1984); *Shooshanian v. Wagner*, 672 P.2d 455 (Alaska 1983); *N. Power & Eng'g Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324 (Alaska 1981); *Cloud v. Kit Mfg. Co.*, 563 P.2d 248 (Alaska 1977). While most of the Alaska Supreme Court's analysis on economic loss recovery arises from strict products liability claims, the Court has also applied the doctrine to negligence claims. *See, e.g.*, *Smith*, 680 P.2d at 1154; *and Shooshanian*, 672 P.2d at 464-65.

[30] 623 P.2d 324; *see also Cloud*, 563 P.2d 248 (distinguishing between direct property damage characterized by sudden and calamitous damage and economic loss which includes deterioration and internal breakage).

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 10 of 31

other calamity as a result of this failure."[31]  "The requirement that the loss occur under dangerous circumstances is necessary because, in [the Alaska Supreme Court's] view, allowing recovery solely on proof that a defect could endanger persons or property is too speculative."[32]  Accordingly, the Court held that the plaintiff could not recover in tort, because his loss was "entirely economic."[33]

The Alaska Supreme Court again addressed these issues in *Shooshanian v. Wagner.*[34]  In that case, the Shooshanians hired a contractor, Wagner, to insulate the walls of their combination home/retail store.  Wagner installed foam insulation manufactured by Borden that emitted toxic fumes.  These fumes posed a health hazard, causing the Shooshanians to replace both the inner walls and the insulation.  The Shooshanians sued both Wagner and Borden, but the superior court dismissed both claims.  The Supreme Court, focusing its analysis on the claims against Borden, reversed and held that the Shooshanians could seek recovery from Borden for the replacement costs they had incurred.  The Court identified the crucial inquiry as "whether the product is dangerously defective and whether the dangerous defect caused the property damage."[35]  The Court held that the insulation was "dangerously defective because it emits toxic fumes that have caused physical harm to the occupants and will continue to

---

[31] *N. Power*, 623 P.2d at 329.

[32] *Id.* at n.11.

[33] *Id.* at 330.

[34] 672 P.2d at 457.

[35] *Id.* at 464.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 11 of 31

pose a health threat," such that their tort claim against Borden for the replacement costs could proceed.[36]

A decade later, in *Pratt & Whitney Canada Inc. v. Sheehan*, the Alaska Supreme Court again applied these principles.[37]  In *Pratt & Whitney*, an aircraft owner sued the manufacturer of the aircraft's engine in strict liability in tort after the engine failed in mid-air, resulting in a forced landing that damaged the aircraft.  The aircraft manufacturer urged the Court to overrule its holding in *Northern Power* and adopt the rule set out by the United States Supreme Court in *East River*.[38]  But the Alaska Supreme Court declined, reasoning, in part, that, "*East River* unjustifiably dismisses the safety concerns attendant to products injuries caused by hazardous defects."[39]  The Court then reaffirmed the approach it had adopted in *Northern Power*, which it described as based "on the potential danger posed by the defect when that danger results in damage to the product itself."[40]  The Alaska Supreme Court reasoned that since mid-flight engine failure is "a

---

[36] *Shooshanian*, 672 P.2d at 463. The Shooshanians also had personal injury claims but the Court affirmed the trial court's determination that these claims were untimely and could not be pursued. *See id.* at 460.

[37] 852 P.2d 1173.

[38] *Pratt & Whitney*, 852 P.2d at 1175. In *East River S.S. Corp. v. Transamerica Delaval, Inc.*, the U.S. Supreme Court held that economic loss is not recoverable in strict products liability under general maritime law, because a claim for a nonworking product can be brought as a breach-of-warranty action. 476 U.S. 858, 872 (1986); *see also St. Denis v. Dep't of Hous. and Urban Dev.*, 900 F. Supp. 1194, 1200 (D. Alaska 1995) (citing *East River*, 476 U.S. at 870).

[39] *Pratt & Whitney*, 852 P.2d at 1179.

[40] *Id.* at 1181.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 12 of 31

paradigmatic example of a 'potentially dangerous' situation," the plaintiff's economic losses in that case were recoverable in tort.[41]

Here, MOA has not presented sufficient evidence upon which a reasonable trier of fact could conclude that the alleged design defect related to the OCSP system has created a potentially dangerous risk to persons or property. For unlike the immediate danger that was present both with the toxic fumes in *Shooshanian* and the mid-air engine failure in *Pratt & Whitney*, MOA has not demonstrated that there is a triable issue of fact that the asserted damage at the Port Expansion is dangerously defective.

The Court acknowledges that MOA has demonstrated that there is a genuine dispute as to whether, in the event of a major earthquake, the Port Expansion presents a significant risk to persons and property. But in the Court's view, that risk is too speculative to permit recovery for economic loss under Alaska law. The most frequent of these seismic events is the Operational Level Earthquake, which the parties agree has an average expected occurrence of once every 72 years.[42] Given that the projected design-life of the OCSP system is 50 years, there is no certainty that such an event will even occur during the Port Expansion's projected lifetime.[43] And even if a high-magnitude seismic event is likely to occur at some unspecified time during the Project's anticipated design-life, for economic losses to be recoverable, Alaska law requires that those losses occur under dangerous circumstances—not that there might be a dangerous

---

[41] *Id.* at 1175.

[42] Docket 281-25 (Suitability Study) at 3.

[43] Docket 281-27 (ICRC Task Order 3105) at 1.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 13 of 31

circumstance at some indeterminate future time. In sum, the Court concludes that allowing economic loss recovery solely on proof that a design defect in the Project could endanger persons or property during a major earthquake at some point in the future is too speculative.[44] Accordingly, MOA cannot recover its losses under this theory.

### 4. MOA's Negligence Cause of Action Against CH2M Hill Alaska

The Court's March 2015 Order recognized two possible theories under which MOA might recover economic losses in tort: as a particularly foreseeable plaintiff or based on professional negligence. For the particularly foreseeable plaintiff exception, the Court cited *Mattingly v. Sheldon Jackson College.*[45] In its March 2015 Order, the Court found that CH2M Hill Alaska had not demonstrated the absence of a material factual dispute as to whether MOA was a particularly foreseeable plaintiff to that defendant.

But after the Court's March 2015 Order, the Alaska Supreme Court revisited the particularly foreseeable plaintiff exception in *Geotek Alaska, Inc. v. Jacobs Engineering Group, Inc.*[46] There, the Alaska Supreme Court clarified that foreseeability alone is not sufficient to create an actionable duty in tort law. Rather, the analysis involves a multi-step process. In *Geotek*, an insolvent subcontractor failed to pay its sub-subcontractor, Geotek, who then sought payment from the general contractor, Jacobs. When Jacobs refused to pay, Geotek sued Jacobs, alleging negligence, among other claims. The state

---

[44] *N. Power*, 623 P.2d at 329 n.11 ("The requirement that the loss occur under dangerous circumstances is necessary because, in our view, allowing recovery solely on proof that a defect could endanger persons or property is too speculative.").

[45] 743 P.2d 356 (Alaska 1987).

[46] 354 P.3d 368, 377 (Alaska 2015) (clarifying that "*Mattingly* simply expanded liability in tort to include purely economic losses").

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 14 of 31

superior court granted summary judgment to Jacobs on the negligence claim and the Alaska Supreme Court affirmed. The Court explained that in deciding whether tort liability is appropriate, a court should determine if a defendant owes a plaintiff a duty of reasonable care. In making that inquiry, a court should "first determine whether a duty is imposed by statute, regulation, contract, undertaking, the parties' pre-existing relationship, or existing case law." If those sources do not resolve the issue, then a court should apply the multi-factor approach the Court set forth in *D.S.W. v. Fairbanks North Star Borough Sch. Dist.* to determine whether an actionable duty exists.[47]

Here, as in *Geotek*, the parties are not in contractual privity, nor is there an applicable statute or regulation that imposes a duty on CH2M Hill Alaska to MOA. Thus, the Court will apply the *D.S.W.* factors to determine whether a duty of care under a negligence theory exists. The *D.S.W.* factors include: (1) the foreseeability of harm to the plaintiff; (2) the degree of certainty that the plaintiff suffered injury; (3) the closeness of the connection between the defendant's conduct and plaintiff's injury; (4) the moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden to the defendant and consequences to the community of imposing a duty; and (7) the availability, cost, and prevalence of insurance for the risk involved.

The first factor, foreseeability, is considered "the single most important criterion for imposing a duty of care."[48] MOA alleges, and the Court agrees, that at all times "it was clear to all parties involved that MOA was the owner of the Project and the customer for

---

[47] *Geotek,* 354 P.3d at 376 (citing *D.S.W. v. Fairbanks North Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981)).

[48] *Id.* at 378 (citing *R.E. v. State*, 878 P.2d 1341, 1346 (Alaska 1994)).

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 15 of 31

whom work was being performed."[49]  But CH2M Hill Alaska argues that MOA's alleged injury was not foreseeable to CH2M Hill Alaska due to its limited role in the Project.  It created a preliminary report when the design was only 35% complete; the final design was then independently reviewed and approved before construction without its involvement.  It adds that it "was never informed that its preliminary analysis would be provided to the Port or attached as an appendix to PND and GeoEngineers' final design."[50]  CH2M Hill Alaska may have played a limited role in the Project, but the Court finds that it knew, or should have known, that if it performed its tasks negligently, a reasonable jury could find that its action could likely have an impact on MOA.

The second factor assesses the degree of certainty of a plaintiff's injury.  MOA and CH2M Hill Alaska disagree as to whether MOA has suffered any harm at all.  CH2M Hill Alaska cites Terracon's preliminary stability assessment in 2004, CH2M Hill Alaska's assessment in 2007, the final stability assessment in 2008, and CH2M Hill's Suitability Study from 2013 in support of its position that "the design provides a stable site in all circumstances that do not involve an intervening earthquake."[51]  MOA relies heavily on CH2M Hill's Suitability Study and asserts that neither the Wet Barge Berth nor the North Extension meet the factors of safety established for the Project.[52]  The degree of uncertainty regarding MOA's damages weighs in CH2M Hill Alaska's favor.

---

[49] Docket 303 at 17.

[50] Docket 280 at 25.

[51] *Id.* at 19.

[52] Docket 303 at 16.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 16 of 31

Factor three assesses the closeness of the connection between MOA's asserted damages and CH2M Hill Alaska's alleged negligence. MOA contends that CH2M Hill Alaska was part of a design team tasked with reviewing the geotechnical work. In that capacity, CH2M Hill Alaska reviewed and validated Terracon's geotechnical work, and independently assessed the global stability of the OCSP design. CH2M Hill Alaska contends that its validation work has little, if any, relationship to the alleged design defect as it "never ended any discussion about data collection, and no one treated it as the final word on that subject."[53] As for the 2007 Report, CH2M Hill Alaska contends that it was based on the 35% design draft and was not relied on for the final design. Given the multiple intervening actors and CH2M Hill Alaska's limited role in the Project, the Court finds that there is not a "close connection" between CH2M Hill Alaska's alleged negligence and MOA's asserted damages. Thus, this factor weighs in CH2M Hill Alaska's favor.

As for the next factor, moral blame, the Alaska Supreme Court has stated that in contrast to negligence that creates a risk of death or physical injury, ordinary negligence that only causes economic harm is ascribed "little blameworthiness."[54] Here, as discussed above, the Court has found that the risk of personal injury is not significant, so this factor weighs in CH2M Hill Alaska's favor.

The next factor considers the policy of preventing future harm. In *Geotek*, the Alaska Supreme Court held that where there are multiple subcontractors, the policy of

---

[53] Docket 325 at 8.

[54] *Geotek*, 354 P.3d at 379.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 17 of 31

preventing future harm "does not require recognition of a novel duty in tort."[55]  Rather, in such situations, the "contracting parties have the ability to protect themselves either by refusing to enter into relationships they consider financially fraught or by negotiating for more protective provisions in their contracts before signing them."[56]  Accordingly, this factor weighs in CH2M Hill Alaska's favor.

The next factor considers the burden on the defendant and consequences to the community from imposing a duty.  In *Geotek*, the Alaska Supreme Court held that ""[i]mposing a duty in cases like this one would subject contractors to the added burden of protecting the purely economic interests of parties with whom they have no privity."[57]  Accordingly, this factor also weighs in CH2M Hill Alaska's favor.

Finally, on the topic of insurance, MOA rejected several proposals to obtain additional insurance.  In 2006, MarAd directed ICRC to explore and potentially procure an Owner's Controlled Insurance Plan (OCIP) for the Project, which would have provided liability coverage for the Project participants.  But the Port Director cancelled further analysis and procurement of an OCIP because he decided to direct those funds toward design and construction activities.   Again in 2007, MOA rejected proposals by ICRC to increase insurance coverage for PND Engineers.[58]  Insurance that could have insulated

---

[55] *Geotek*, 354 P.3d at 379 (citing *Mesiar v. Heckman*, 964 P.2d 445, 451 (Alaska 1998)).

[56] *Id.* at 379 (citing *Alaska Pac. Assurance Co. v. Collins*, 794 P.2d 936, 946 (Alaska 1990)); *see also St. Denis v. Dep't of Hous. and Urban Dev.*, 900 F. Supp. 1194, 1206 (D. Alaska 1995) ("Contracts permit the parties to determine for themselves what duties will be assumed and to whom and how risk will be distributed.").

[57] *Geotek*, 354 P.3d at 379.

[58] Docket 302-14 (Carlson Depo.) at 2-5.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 18 of 31

MOA from its alleged losses was clearly available.  This factor weighs in CH2M Hill Alaska's favor.

Aside from foreseeability, all the other *D.S.W.* factors weigh against imposing a tort duty on CH2M Hill Alaska for its alleged negligence.  While the Alaska Supreme Court has identified foreseeability as the most important consideration, it alone is not enough to create an actionable duty in negligence.[59]  Accordingly, CH2M Hill is entitled to summary judgment on MOA's negligence claim against it.

### 5. Claims Exempt from the Application of the Economic Loss Doctrine

#### a. Professional Negligence

The Court's March 2015 Order did not determine whether CH2M Hill Alaska owed MOA a duty of professional care.  The Court observed that the cases that address professional negligence under Alaska law are significantly fact-dependent.  And while the parties argued that the risk allocation provision in their contracts should control, those provisions were not provided with the earlier briefing.[60]  The parties have now provided the relevant contractual language and the record is now sufficiently developed for the Court to determine whether MOA's claim for professional negligence against CH2M Hill Alaska may proceed.

---

[59] *See Geotek Alaska, Inc. v. Jacobs Engineering Group, Inc.*, 354 P.3d at 377 (Alaska 2015) (holding that foreseeability without more is not enough to create a duty in tort); *Mesiar v. Heckman*, 964 P.2d 445, 450 (Alaska 1998) (finding no duty despite plaintiff's injury being foreseeable); *see also State for Use of Smith v. Tyonek Timber, Inc.,* 680 P.2d 1148, 1153 (Alaska 1984) (finding that special relationship between the parties not sufficient to allow recovery under negligence theory).

[60] Docket 188 (Order) at 12.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 19 of 31

The District Court of Alaska has previously addressed the viability under Alaska law of a professional negligence claim that seeks only recovery for economic losses. In *St. Denis v. Dep't of Hous. and Urban Dev.*, the plaintiff purchased a duplex from the U.S. Department of Housing.[61] The plaintiff later discovered the duplex's roof was faulty and incurred costs to repair it. The plaintiff asserted that the government had inspected the roof but did not repair or disclose the problem to her before the sale. In its analysis, the district court acknowledged that Alaska law would recognize a duty sounding in tort between parties to a real estate contract, but queried whether such negligence was actionable by a purchaser who had only suffered economic loss. The district court looked at two lines of Alaska cases: tort claims for defective products and cases addressing the applicable statute of limitations for professional malpractice.[62] Citing to *Pedersen v. Flannery*, the district court concluded that in any action for professional negligence, "when the damages sought are for economic loss, the action must be on the contract."[63]

In *St. Denis*, the district court also relied extensively on another Alaska Supreme Court decision, *Lee Houston & Assoc., Ltd. v. Racine*.[64] In that case, the Alaska Supreme Court held that Alaska's six-year statute of limitations applied to a vendor's action seeking economic losses, specifically lost profits, against her real estate agent and real estate

---

[61] 900 F. Supp. 1194, 1995 (D. Alaska 1995).

[62] *Id.* at 1201-2.

[63] *Id.* at 1202 (citing *Pederson v. Flannery*, 863 P.2d 856 (Alaska 1993)). In *Pedersen*, the Alaska Supreme Court held that the two-year tort statute of limitations applied to a patient's claim for damages for physical injuries allegedly caused by his doctors' medical malpractice. The case did not specifically address whether or when economic losses are recoverable in tort under Alaska law.

[64] 806 P.2d 848, 853-54 (Alaska 1991).

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 20 of 31

agency. On appeal, the defendant argued that the two-year tort statute of limitations should have applied because the plaintiff's claim was a tort-based claim that was not based on the contract. However, the Court noted that Alaska's six-year statute applied not only to contract actions, but to actions "upon a contract *or liability*."[65] Relying on that language, the Court interpreted the six-year statute "as applying to a category of actions broader than those based only on contract principles," so as to include a malpractice claim arising from a professional service relationship that primarily involves economic injury.[66]

In *St. Denis*, the district court accorded little weight to another Alaska Supreme Court case that had been decided two years earlier, *State v. Transamerica Premier Insurance Co.*[67] In *Transamerica*, the surety for a contractor of a construction project brought a claim against the State seeking tort damages for business destruction. The State was the owner of the project, and was alleged to have negligently reviewed the project plans. There, the Court declined to find an actionable claim against the State. The Court distinguished between "design professionals" that the Court found owe a duty in tort "to exercise reasonable care, or the ordinary skill of the profession" and "project

---

[65] *Lee Houston*, 806 P.2d at 854 (citing AS 09.10.050) (emphasis in original).

[66] *Id.*

[67] 856 P.2d at 769. The district court in *St. Denis* declined to follow *Transamerica*, addressing it in a footnote, in which it found that in *Transamerica*, "the [Alaska Supreme] court apparently overlooked the fact that where. . . the claim was for economic damages, the gravamen test had been abandoned in favor of a nature of the damages test in *Lee Houston*." 900 F. Supp. at 1203 n.12. *See also Cape Fox Corporation v. Jackson,* 2010 WL 3951988 *4 (D. Alaska 2010) (relying, "in the interests of continuity," upon *St. Denis* while acknowledging its tension with *Transamerica*). While this Court has carefully considered the need for continuity within the District Court of Alaska, the Court has determined that *Transamerica* is directly controlling Alaska Supreme Court precedent, and should be applied in this case in which Alaska substantive law controls.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 21 of 31

owners" that owe "purely contractual duties as to the accuracy of the designs."[68]  The Alaska Supreme Court concluded that a contractor that suffers economic loss because the *owner* negligently provides defective plans must sue on the contract, and has no claim in tort.  But the Alaska Supreme Court then expressly held that "a project owner may sue a *design professional* in tort for economic losses arising from the professional's malpractice."[69]  *Transamerica* has not been overruled by the Alaska Supreme Court; rather, it has been cited on occasion by that Court.[70]

Thus under Alaska law, CH2M Hill Alaska, as a professional engineering company hired for its expertise, owed a professional duty of care to exercise the ordinary skill of a professional in the field to foreseeable plaintiffs.  The Court finds that CH2M Hill Alaska knew or reasonably should have known that MOA, as the ultimate customer of the project, was a foreseeable plaintiff.  And under *Transamerica*, MOA, as the project owner, may sue a design professional in tort for economic losses arising from the professional's malpractice.  Accordingly, CH2M Hill Alaska owed an actionable duty to MOA under Alaska tort law.

CH2M Hill Alaska argues that imposing a duty of professional care would uproot the specific allocation of risk negotiated by the parties and delineated in its contract.[71]

---

[68] *Transamerica*, 856 P.2d at 772.

[69] *Id.* (emphasis added).

[70] *See John's Heating Service v. Lamb*, 46 P.3d 1024 (Alaska 2002); *Anchorage v. Gentile*, 922 P.2d 248 (Alaska 1996).  And in *Geotek*, the Alaska Supreme Court did not look to the nature of the damages to determine if a negligence cause of action for economic losses was viable, but rather turned to the *D.S.W.* factors. 354 P.3d at 376.

[71] Docket 280 at 15-16.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 22 of 31

But there appears to be no specific provision limiting or allocating the risk of professional negligence in the PND-CH2M Hill Alaska contract.[72] The only provision that discusses liability in that contract references PND's obligations to ICRC, and holds CH2M Hill Alaska to the same agreement.[73] The provision is an indemnification clause that essentially reproduces the indemnification requirement imposed by Alaskan law that mandates that subcontractors be held responsible for losses or damages caused by their *sole* negligence or willful misconduct.[74] This contractual provision does not show that the parties carefully allocated the risks of professional negligence. Accordingly, the claim for professional negligence can properly stand.

But the existence of a duty is not the sole element of a claim for professional negligence. The Alaska Supreme Court has articulated the following elements for the claim:

> (1) the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.[75]

---

[72] At Docket 303 at 37-38, MOA cites to the June 9, 2006 contract between ICRC and PND, which contains an indemnification clause. *See* Docket 306-36 (ICRC-PND Subcontract). MOA also cites the 2006 PND-CH2M Hill Alaska contract, which contains one sentence that relates to risk allocation: "[CH2M Hill Alaska] will be required to meet the same Owner conditions and contractual commitments the PND is obligated to meet." Docket 306-18 at 1 (PND-VECO Subcontract).

[73] Docket 306-36 (ICRC-PND Subcontract); Docket 306-18 (PND-VECO Subcontract).

[74] *See* Alaska Statute 45.45.900.

[75] *Breck v. Moore*, 910 P.2d 599, 604 (Alaska 1996) (citing *Linck v. Barokas & Martin*, 667 P.2d 171, 174 n.4 (Alaska 1983)); *cf.* Restatement (Third) of Torts: Liability for Economic Harm § 6 (Am. Law Inst., Tentative Draft 2014) (limiting loss for claim of negligent performance of services that causes economic to person or "persons for whose benefit the actor performs the service; and through reliance upon it in a transaction that the actor intends to influence").

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 23 of 31

A defendant's malfeasance constitutes a proximate cause when it is more likely than not a substantial factor in bringing about the plaintiff's injury.[76] At summary judgment, MOA needs to present sufficient evidence from which a reasonable trier of fact could find that CH2M Hill Alaska's alleged negligence played an important role in bringing about MOA's injury.[77] Here, CH2M Hill Alaska was assigned two tasks: conduct a global stability analysis of the OCSP system and review and verify Terracon's geotechnical work.[78] The Court will address each task separately.

   i. *March 2007 Global Stability Report*

CH2M Hill Alaska prepared a stability report in 2007 that was attached as an appendix to the April 2008 Geotechnical Analysis Report prepared by PND and GeoEngineers (the Design Team).[79] Despite its attachment to the 2008 Report, CH2M Hill Alaska argues that there is no evidence that anyone relied on its 2007 report. CH2M Hill Alaska presents evidence that the Design Team disregarded the information contained in the 2007 Report. For example, the representative for GeoEngineers, Dan Mageau, testified at deposition, "I don't believe we used [CH2M Hill Alaska] at all, no."[80] Terracon's expert, Dr. Youseff Hashash, reviewed CH2M Hill Alaska's analysis and concluded that CH2M Hill Alaska's report should be "updated," or "excluded and not

---

[76] *Dura Corp. v. Harned*, 703 P.2d 396, 406 (Alaska 1985).

[77] *State v. Abbott*, 498 P.2d 712, 727 (Alaska 1972).

[78] Docket 303 at 4-8.

[79] The 2008 Geotechnical Analysis Report refers to PND and GeoEngineers as the "Design Team." Docket 328-13 (2008 Report) at 21.

[80] Docket 281-17 (Mageau Depo.) at 3-4.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 24 of 31

referenced."[81]  Dr. Hashash's opinion was then attached to the 2008 Report, along with CH2M Hill Alaska's 2007 Report.

There is some limited evidence that the Design Team considered CH2M Hill Alaska's 2007 Report.  PND representative Dennis Nottingham testified that the report was used as "quality control" for the 2008 Report.[82]  Also, in response to Dr. Hashash's recommendation to exclude the report, the Design Team disagreed, and stated that the VECO (CH2M Hill Alaska) engineer had "stated his assumptions using available data and came to his own conclusions."[83]  In the Court's view, this limited evidence is insufficient to demonstrate that a reasonable jury could find that CH2M Hill Alaska's 2007 Report was a *substantial* factor in bringing about MOA's alleged injury. Accordingly, summary judgment is granted to CH2M Hill Alaska with respect to its March 2007 Report and MOA's professional negligence claim.

### ii.  Verifying Terracon's Geotechnical Findings

CH2M Hill Alaska was also tasked with confirming Terracon's geotechnical work— work that was then relied upon by PND and GeoEngineers as a basis for the OCSP design.  Both parties agree that the validation is reflected in a May 2006 letter from CH2M Hill Alaska engineer Kurt Stangl to PND engineer Alan Christopherson.  In the letter, Mr. Stangl confirmed that VECO (now CH2M Hill Alaska) had reviewed "all aspects of the geotechnical exploration program," and that all testing was "consistent and appeared to

---

[81] Docket 281-23 (Hashash Review) at 6.

[82] Docket 280 at 13 (citing 281-10 (Nottingham Depo.) at 5).

[83] Docket 306-30 at 17.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 25 of 31

be valid."[84]  Based on its review of the techniques and results, CH2M Hill Alaska's engineer opined that the geotechnical data is "acceptable for use in the design of the Port Expansion Project."[85]

CH2M Hill Alaska argues that MOA has not presented any evidence "that might provide a jury with a basis for reasonably concluding that the May 30, 2006 contains negligent statements."[86]  In support, CH2M Hill Alaska notes that both the Army Corp of Engineers and CH2M Hill Inc. agree with the contents of the 2006 letter, as their independent reviews respectively affirm Terracon's sampling and testing procedures[87] and the amount of information collected.[88]  But MOA's expert report concludes that CH2M Hill Alaska "failed to adequately evaluate whether Terracon's geotechnical data was sufficient for use" in OCSP design.[89]  In the Court's view, this conclusion is sufficient to create a genuine dispute of fact as to whether the 2006 letter contains negligent statements.

As for causation, PND witness Dennis Nottingham testified that CH2M Hill Alaska's affirmation of Terracon's findings was one of many approvals that led PND to use Terracon's geotechnical data as a basis for the final OCSP design.  Mr. Nottingham confirmed that Terracon's 2004 geotechnical report was "used by PND as the basis for

---

[84] Docket 306-11 (Stangl 2006 Letter) at 1-2.

[85] *Id.* at 2.

[86] Docket 325 at 8.

[87] Docket 326-2 (Army Corp Letter) at 2.

[88] Docket 326-3 (Suitability Study) at 5.

[89] Docket 394-1 (MOA Expert Report) at 153-54.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 26 of 31

its design."[90]   Mr. Nottingham also testified that CH2M Hill Alaska's verification of Terracon's findings led PND to believe that the "geotechnical work was sufficient."[91]

CH2M Hill Alaska responds that its 2006 letter verifying Terracon's findings was not a substantial factor in bringing about MOA's harm.  It contends that (1) the letter was not mentioned in the final geotechnical report; (2) the letter never suggested that no further data would be useful; and (3) the letter only validated the procedures Terracon had used to complete its soil assessment.[92]   In the Court's view, the fact that the letter was not mentioned in the final report is not dispositive.  And even if the letter did not end the discussion as to whether more data might help, it still could have reasonably induced PND to move forward with the design.  Last, while most of the letter addresses Terracon's soil assessment, the last line of the letter states, "it is our opinion that this data is acceptable for use in design of the Port Expansion Project," which suggests a general validation of Terracon's findings.  All that is required of MOA at this stage in litigation is to show a genuine dispute of fact, and the Court finds that the May 2006 letter, in conjunction with Mr. Nottingham's deposition testimony, establishes a triable issue of fact as to whether the requisite proximate causal connection exists. Accordingly, CH2M Hill Alaska' motion for summary judgment with respect to MOA's professional negligence claim against it, insofar as it relates to the 2006 Stangl letter, is denied.

_____

[90] Docket 306-17 (Nottingham Depo.) at 4.

[91] *Id.* at 7.

[92] Docket 325 at 7-8.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 27 of 31

b.  Negligent Misrepresentation

The Court's March 2015 Order did not address MOA's then recently added claim for negligent misrepresentation.  But the claim has now been fully briefed and is included in CH2M Hill Alaska's current motion for summary judgment.

The economic loss doctrine does not apply to claims for negligent misrepresentation, as under Alaska law the cause of action is "complete when the injured party has suffered a pecuniary loss as a result of the misrepresentation."[93]  The tort of negligent misrepresentation consists of four elements: first, the defendant made the statement in the course of business or any activity in which he has a pecuniary gain; second, the statement was false at the time it was made; third, the plaintiff justifiably relied on the statement; and fourth, the defendant failed to exercise reasonable care in making the statement.[94]

Although the alleged misrepresentation need not have been made directly to MOA for the cause of action to apply, there must nonetheless being a showing that the statement was communicated to MOA and it actually relied upon it.  In *Selden v. Burnett*, investors sought to sue an accountant who had negligently recommended a bad investment. The accountant had advised his clients to invest.  His client then communicated this bad recommendation to outside investors.[95]  On appeal, the Alaska

---

[93] *Bubbel v. Wien Air Alaska*, 682 P.2d 374, 381 (Alaska 1984).

[94] *Willard v. Khotol Services Corp.*, 171 P.3d 108, 118 (Alaska 2007) (citing Restatement (Second) of Torts § 552 (1977)); *see also* Restatement (Second) of Torts § 552 cmt. g (1977) ("direct communication of the information to the person acting in reliance upon it is not necessary").

[95] *Selden v. Burnett*, 754 P.2d 256, 261 (Alaska 1988).

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 28 of 31

Supreme Court affirmed summary judgment for the accountant, finding that he never *intended* for the outside investors to rely on his advice. But in *Selden*, there was evidence that the statement had actually been communicated to the investors, although that communication was made indirectly through the client. Thus, to maintain its claims of negligent misrepresentation against CH2M Hill Alaska, MOA must demonstrate that CH2M Hill Alaska made a misrepresentation that was communicated, either directly or indirectly, to MOA upon which MOA actually and justifiably relied.[96]

          i.   *2007 Global Stability Report.*

To show that it actually relied on CH2M Hill Alaska's 2007 report, MOA cites to George Vakalis's deposition, in which he testified, "the municipality relied on the total [2008 PND] report."[97]   CH2M Hill Alaska responds that Todd Cowles, the only MOA employee that reviewed CH2M Hill Alaska's report, testified at deposition that he did not use the report for anything and understood that the report contained assumptions and statements that were "inconsistent with the main body" of PND's report.[98]   Based on the Court's review of the record, and even when all reasonable inferences are drawn in favor of MOA on this point, MOA has failed to present evidence from which a reasonable trier of fact could conclude that MOA actually and justifiably relied, either directly or indirectly, on the contents of CH2M Hill Alaska's 2007 report. Mr. Vakalis's testimony that MOA

---

[96] *See Anchorage Chrysler Center, Inc. v. DaimlerChrysler Corp.*, 129 P.3d 905, 915 (Alaska 2006) (finding that actual reliance and justifiable reliance are both prerequisites to claims of negligent misrepresentation).

[97] Docket 306-34 (Vakalis Depo.) at 3.

[98] Docket 281-5 (Cowles Depo.) at 10.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 29 of 31

relied upon the entirety of the March 2008 PND Geotechnical Report, including the attached report by CH2M Hill Alaska, is insufficient to show that there was a misrepresentation made by that entity upon which MOA actually relied.

   ii. *Verification of Terracon's Conclusions*

  MOA has demonstrated a triable issue as to whether PND and the rest of the Design Team may have relied on Mr. Stangl's 2006 letter, and hence the Court denied CH2M Hill Alaska's motion for summary judgment as to the professional negligence claim associated with that letter, as explained above.  But MOA has not pointed to any evidence that anyone at MOA, either directly or indirectly, actually or justifiably relied on the statements in Mr. Stangl's 2006 letter.  Accordingly, summary judgment on this claim to CH2M Hill Alaska is warranted.

## CONCLUSION

  Based on the foregoing, IT IS ORDERED that CH2M Hill Alaska, Inc.'s Motion for Summary Judgment at Docket 280 is GRANTED in part and DENIED in part as follows:[99]

(1) Any alleged damage to the land under the OCSP system or to the waters of Cook Inlet is not damage to "other property";

(2) Any risk of personal injury or property damage created by the OCSP design is too speculative to constitute a significant risk;

(3) CH2M Hill Alaska's motion for summary judgment on MOA's negligence claim is granted;

(4) CH2M Hill Alaska's motion for summary judgment on MOA's claim for

---

[99] Based on this order, Terracon's Joinder to Motion for Summary Judgment at Docket 302 is rendered moot.

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 30 of 31

professional negligence is granted with regard to the March 2007 Report and denied with regard to the 2006 Stangl letter; and

(5) CH2M Hill Alaska's motion for summary judgment on MOA's claim for negligent misrepresentation is granted.

DATED this 31st day of October, 2016 at Anchorage, Alaska.

<u>/s/ Sharon L. Gleason</u>
UNITED STATES DISTRICT JUDGE

Case No. 3:13-cv-00063-SLG, *Anchorage v. Integrated Concepts and Research Corp., et al.*
Order re CH2M Hill Alaska's Motion for Summary Judgment
Page 31 of 31